J-S11035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DIAJHMERE DORTCH | : | |
| | : | |
| Appellant | : | No. 928 WDA 2024 |

Appeal from the PCRA Order Entered July 1, 2024
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000068-2020

BEFORE:  MURRAY, J., KING, J., and LANE, J.

MEMORANDUM BY LANE, J.:                         **FILED: June 17, 2025**

Diajhmere Dortch ("Dortch") appeals from the order dismissing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

We glean the following factual history from the evidence and testimony presented at trial.  On November 15, 2019, Officer Nicholas Strauch ("Officer Strauch") was monitoring social media sites for criminal activity when he discovered a Snapchat video posted by Dortch's brother, Destin.  The video depicted both Dortch and Destin, with Dortch wearing a black Chicago Blackhawks hoodie and holding a loaded AR-15 rifle and a black handgun with a laser attachment.  Because Snapchat overlays a timestamp onto each video that is posted onto its platform, Officer Strauch could tell that Destin filmed this video at approximately 1:00 a.m. that morning.  Later that day, Officer Strauch discovered another Snapchat video, this time posted by Dortch, with

_____

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

a timestamp indicating that he filmed it at 5:30 p.m. This video depicted both Dortch and Destin in the same room as the previous video, and pertinently showed Dortch wearing a green camouflage jacket over the same black Chicago Blackhawks hoodie, again holding the loaded AR-15 and a black handgun with a laser attachment. Because Dortch was serving the probationary term of a prior sentence at the time, police knew that he could not legally possess either firearm.

Accordingly, police immediately began surveilling the residence registered to Dortch and his brother. Within roughly one-and-one-half hours following the discovery of the second Snapchat video, police witnessed both brothers separately leaving the residence. When Destin left the residence, police observed that he was wearing clothing matching what he wore in the recent Snapchat videos. *See* N.T, 4/7/21, at 71. Similarly, when Dortch departed from the residence in a vehicle driven by another individual, Officer Strauch followed the vehicle and confirmed that Dortch was wearing the same green camouflage jacket and black Chicago Blackhawks hoodie during a subsequent traffic stop.

Four days later, on November 19, 2019, Officer Strauch discovered yet another Snapchat video posted by Dortch, once more depicting two individuals, albeit with their faces obscured, in the same room as the other videos. Notably, one of the individuals in the video was holding a handgun with a laser attachment. By noting "things like the furniture of the house, the color of the paint in the house, [and] the trim[,]" from the background of each

- 2 -

of these videos, police further discerned that the room's features were consistent with the general layout and structure of the brothers' home. *Id*.

Based on the above, police sought and obtained a warrant to search Dortch's residence for the firearms displayed in the videos. When executing the warrant, police discovered, *inter alia*, a loaded AR-15 rifle, a Glock 43 handgun, and a 9mm Hi-Point pistol. Notably, the AR-15 matched that shown in Dortch's possession in the Snapchat videos. Further, although neither the Glock 43 handgun nor 9mm Hi-Point pistol matched the handgun that Dortch possessed in the videos, Dortch admitted to police that he owned the Glock 43 handgun and that a search of the weapon would reveal his fingerprints and DNA. Police arrested Dortch, and the Commonwealth charged him with, *inter alia*, two counts of persons not to possess firearms.[2]

Following trial, a jury found Dortch guilty of both counts of persons not to possess firearms. On June 21, 2021, the trial court imposed an aggregate sentence of eight to sixteen years' incarceration. This Court affirmed the judgment of sentence, and on May 23, 2023, our Supreme Court denied Dortch's petition for review. *See Commonwealth v. Dortch*, 284 A.3d 889 (Pa. Super. 2022) (unpublished memorandum), *appeal denied*, 298 A.3d 381 (Pa. 2023). Dortch did not seek review in the United States Supreme Court.

---

[2] The Commonwealth had also charged Dortch with receiving stolen property, but it withdrew that charge during trial. *See* N.T., 4/8/21, at 3.

On July 27, 2023, Dortch filed a *pro se* PCRA petition, his first. The PCRA court appointed counsel, who filed an amended petition.[3] In the amended petition, Dortch argued that his trial counsel was ineffective for not filing a motion to suppress the firearms on the basis that the Snapchat videos were insufficient to establish probable cause on a temporal basis (*i.e.*, whether the videos viewed on Snapchat were so old as to be stale), and on a locus

_____

[3] Under the PCRA, a petition must be filed within one year of the date the judgment of sentence becomes final. **See** 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States, or the expiration of time for seeking such review. **See** 42 Pa.C.S.A. § 9545(b)(3). Here, our Supreme Court denied Dortch's petition for allowance of appeal on May 23, 2023. Because Dortch did not petition the United States Supreme Court for further review, his judgment of sentence became final ninety days later, on August 21, 2023. **See** U.S. Sup. Ct. R. 13 (stating appellant must file a petition for writ of *certiorari* in the United States Supreme Court within ninety days after entry of judgment by a state court of last resort). Dortch had one year from this date, until August 21, 2024, to file his instant petition.

Nonetheless, because Dortch filed his *pro se* petition within the ninety-day period in which he could have pursued an appeal in the United States Supreme Court, his petition was premature, and therefore a legal nullity. **See Commonwealth v. Smith**, 244 A.3d 13 (Pa. Super. 2020) (holding that a PCRA court lacks authority to address a premature PCRA petition as it is a legal nullity). However, because PCRA counsel filed a petition on Dortch's behalf on October 5, 2023, after Dortch's judgment of sentence became final, we conclude that this timely filing permitted the PCRA court to address his claims. **See Commonwealth v. Kubis**, 808 A.2d 196 (Pa. Super. 2002) (holding a premature petition was not cognizable under the PCRA and therefore the subsequently filed counseled petition constituted a first petition); **see also Commonwealth v. Shower**, 301 A.3d 885 (Pa. Super. 2023) (unpublished memorandum) (concluding that the PCRA court had jurisdiction to consider petitioner's facially premature claims as they were timely raised in an amended petition filed by appointed PCRA counsel); Pa.R.A.P. 126(b)(1)-(2) (stating unpublished, non-precedential decisions of this Court filed after May 1, 2019, "may be cited for their persuasive value").

- 4 -

basis (*i.e.*, whether there was any nexus between the room where the videos were taken and Dortch's residence). The PCRA court conducted an evidentiary hearing, during which trial counsel testified as follows:

> [PCRA Counsel]: Now, when you assumed custody of this case and legal representation of [Dortch], did you review and evaluate [the] facts related to obtaining a search warrant and the execution thereof?
>
> [Trial Counsel]: Yes, sir. I did.
>
> Q: And did you determine and consider whether there were any suppression issues to be raised on behalf of your client?
>
> A: Every case that I have that involves a search or a statement made by my client, I look at all the surrounding circumstances. In this case, I looked at the four corners of the search warrant application, affidavit of probable cause. I did review all of the facts with it. And actually I was . . . quite impressed with the police investigation in this case. It was actually quite thorough, at least I believed it . . . was quite thorough.
>
> * * * *
>
> Q: [D]id you have an opportunity to review [the Snapchat videos] as part of discovery?
>
> A: I did, sir.
>
> Q: And did you also have an opportunity to determine whether there was any tagging of those videos to determine when your client actually shot and posted [them]?
>
> A: I don't recall that, sir.
>
> Q: So you have no recollection as to the duration of time as to whether these potential videos could have been stale or remote in time as to support potential suppression videos?

A: The way I looked at the evidence at the time, sir, was the Snapchat video was – posted in the evening. The police started surveillance. Destin came out of the house dressed in the same clothes as the video that was just posted. And then, of course, [forty-five] minutes after that, [Dortch] came out in the same clothing. And then, of course, each subsequent video was taken from the same room with the same characteristics, the unique characteristics that the police had described.

I felt at that time that the standard for probable cause had been met by the police.

* * * *

Q: [W]as there some predicate to challenge the timing of those videos? So you felt that there was actionable probable cause based upon your evaluation of those videos.

A: There was, sir. And then it was because of the immediacy of seeing both Dortch brothers to the posting of the video. And then, of course, there was also the subsequent postings and then identifications of the Dortch brothers. It was cumulative.

* * * *

Q: So the second issue, did you consider or evaluate whether the police had substantially and sufficiently established the locus of those respective videos for purposes of executing a search warrant?

A: I did, sir.

Q: Now, would you agree that the fact that [Dortch] was wearing the same clothing during the videos and when the vehicular stop took place would have a relevance or import to determine the locus of those videos necessarily?

A: When you say locus of the videos, where the video was taken?

Q: Yes.

A: I would agree with that. But my analysis again, was the whole totality of the video posting, the surveillance and then the

identification of both Dortch brothers all in a very reasonable span of time. I believe that the probable cause standard was met sufficiently by law enforcement.

* * * *

Q: Now, again, going back to your commencement of representation, did you ever consider whether the police had sufficiently established the locus of the videos and actionable probable cause for that aspect, that being we'll be able to determine specifically that these videos transpired within the confines of [Dortch's residence]?

A: I believe that they did, sir.

Q: And you dismissed that and discounted any basis for pursuing suppression on that ground?

A: Yes, sir. Again, I believed they met their burden – the low burden for a search warrant. Again, it was that sequence of events. And the sequence of events went on . . . between the 15th and the 19th of November.

Q: And again, did you consider that specific legal argument to support a suppression or you did not think of it or was it simply considered and ruled out?

A: I looked at it from all different ways and all different ways that I could challenge it. And I didn't believe any of those arguments existed for this case.

N.T., 6/28/24, at 12-16, 20-21. On cross-examination, trial counsel clarified that he had been practicing criminal law since 1988, and that he had represented "many" defendants charged with similar weapons-related offenses. *Id*. at 21. Trial counsel elaborated that because the majority of his cases involved search warrants, he had a "pretty good idea of what constitutes probable cause such that [it] would justify the issuance of a search warrant." *Id*. at 22. At the conclusion of the hearing, the PCRA court determined that

that the search warrant was valid as the Commonwealth's evidence satisfied the elements required to establish probable cause.

On July 1, 2024, the PCRA court dismissed Dortch's PCRA petition. Dortch filed a timely counseled notice of appeal, and the PCRA court ordered him to file a Pa.R.A.P. 1925(b) concise statement. Dortch timely complied by filing a concise statement. Therein, however, he challenged only the trial court's ruling that counsel was not ineffective for failing to file a motion to suppress on the basis that the Commonwealth did not establish probable cause as it relates to the location of the videos and firearms.

Dortch raises the following issue for our review:

> Whether the lower court erred in failing to grant PCRA relief relating to the ineffective assistance of trial counsel in failing to move to suppress the evidence seized from [Dortch's] residence as the Commonwealth lacked probable cause to establish the locus of the videos placed on social media and could not proffer a sufficient predicate for probable cause to legally attain a search warrant to execute on the subject residence?

Dortch's Brief at 2 (unnecessary capitalization omitted).

Our standard of review of an order dismissing a PCRA petition is well-settled:

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the

- 8 -

petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

In the instant matter, Dortch argues that his trial counsel was ineffective. In assessing a claim of ineffective assistance under the PCRA, we presume that counsel has rendered effective assistance. ***See Commonwealth v. Reid***, 259 A.3d 395, 405 (Pa. 2021). To overcome the presumption, the petitioner must show that:

> (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different.

***Id***. (citation and quotation marks omitted). The defendant must satisfy all three prongs of this test to obtain relief under the PCRA. ***See id***. Accordingly, the failure to satisfy any one of these prongs will result in the rejection of the petitioner's ineffectiveness claim. ***See id***.

Relevantly, the Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures. ***See*** U.S.Const., Amend. IV, § 1; ***see also*** Pa.Const. Art. I, § 8. To search protected areas, authorities must possess "sufficient probable cause . . . as determined by a neutral magistrate." ***Commonwealth v. Ani***, 293 A.3d 704, 715 (Pa. Super. 2023). "[T]he legal

determination of whether a warrant was supported by probable cause is limited to the four corners of the affidavit." *Id*. at 709.

"[P]robable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules." *Id*. at 715 (*citing Illinois v. Gates*, 462 U.S. 213, 232 (1983)). "To establish probable cause, the Commonwealth must demonstrate that a search meets the requirements of the 'totality-of-the-circumstances' test." *Commonwealth v. Barr*, 266 A.3d 25, 40 (Pa. 2021). "Pursuant to [this] test . . . an issuing authority is simply [required] to make a practical, commonsense decision whether, given all of the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Jones*, 988 A.2d 649, 655 (Pa. 2010). In accordance with this, "[p]robable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted." *Commonwealth v. Davis*, 241 A.3d 1160, 1173 (Pa. Super. 2020) (citation omitted).

Dortch argues that his trial counsel was ineffective by failing to present and preserve a legal challenge to the police search of his residence. Specifically, Dortch asserts that "none of [the] evidence emphasized by the police served to inform them or establish where the activity was transpiring

absent some form of corroboration, which was wholly lacking in this instance."
Dortch's Brief at 6. Dortch elaborates that it was "unclear as to what caused
police to conclude that the conduct displayed on the respective videos took
place" at his residence given that they "lacked any basis to document that the
backdrop of the video content [was] consistent with" it. *Id*. Dortch points
out that: (1) "police did not have or employ a confidential informant to confirm
that the [criminal] activity documented on the Snapchat videos was occurring
within" his residence; (2) "there was [not] anything unique or dispositive
depicted in the background of the videos that could reasonably lead to the
conclusion that [his residence] was the locus of the firearm possession[;]" and
(3) "police did not secure any third party confirmation that the background as
depicted was consistent with the interior" of his residence. *Id*. at 7.

Instead, Dortch asserts that police "never observed [him or his brother]
leave the residence with any indicia that they had a firearm on their person"
nor did they ever make "note of observing the interior of the residence as to
make a comparison and confirm the background depicted in the Snapchat
videos." *Id*. Similarly, Dortch claims that when police stopped the vehicle
that Dortch was in, they "failed to elicit any evidence" that he possessed a
firearm and could only note and affirm "that he was still wearing the . . .
Chicago Blackhawks hoodie[.]" *Id*. at 8. In accordance with this, Dortch
highlights that his trial counsel was unable to provide a convincing response
as to how this clothing "would show the locus of the criminal activity and

evidence thereof." *Id*. Thus, Dortch contends that because "[t]here was nothing else developed or cited by the police external from Snapchat videos for purposes of probable cause to execute a search warrant[,] the sole predicate for the . . . warrant was limited to what was depicted in those videos[,]" which alone were insufficient to support a finding of probable cause. *Id*.

As it relates to the reasonability prong of the ineffectiveness test, Dortch states that "[t]he sum and substance of the rationale as to why [trial] counsel did not pursue a suppression challenge is his interpretation and deference to the scope of proof and evidence underlying the criminal charges." *Id*. However, Dortch maintains that "neither [trial] counsel or the Commonwealth has been able to proffer any reasonable evidence to support that the police possessed probable cause to assert that" the criminal activity took place at Dortch's residence. *Id*. In support, Dortch cites to Officer Strauch's testimony at trial, where in response to whether police knew what house the videos were taking place in prior to executing the warrant, the officer conceded only "that 'we have an idea, but we're not certain.'" *Id*. at 9. Because probable cause requires that, "the underlying predicate cannot be speculative or a mere suspicion[,]" Dortch argues the officer's uncertainty regarding the location of the room from the videos alone "explains why the police did not immediately arrest [him] or seek a search warrant" upon their initial discovery. *Id*. Thus, Dortch claims that because police "were wholly limited to the Snapchat

videos[,]" and because "[t]he nature and scope of those video depictions failed to offer any probable cause as to locus[,]" his trial counsel's conclusion that the search warrant was not worthy of legal challenge was erroneous. *Id*.

Finally, Dortch argues that trial counsel's failure to challenge the warrant substantially prejudiced him in satisfaction of the third prong of the ineffectiveness test. Specifically, he contends that "absent the execution of the search warrant and the seizure of the firearms from the residence[,] there would have been insufficient evidence for the Commonwealth to file the criminal charges in this case[,]" and that any "inculpatory statements made [by him or his brother] thereafter would also have been subject to striking." *Id*. at 12. Thus, he asserts that "the failure of [trial] counsel to exhaust an available prospectively dispositive defense constitutes patent ineffectiveness of a most prejudicial form." *Id*. [4]

The PCRA court considered Dortch's ineffectiveness claim and concluded that it was without merit, referring to the reasoning that it set forth at the evidentiary hearing, as follows:

> Now, the issue[] is that [trial counsel] was ineffective in his assistance in helping [Dortch] in failing to raise a pretrial motion challenge and the probable cause of the search warrant. In other words, he should have raised the issue of staleness of the activity

---

[4] We note that although Dortch additionally claimed in his PCRA petition that trial counsel was ineffective for failing to challenge the timeliness of the Snapchat videos, he did not preserve this issue by raising it in his concise statement. Accordingly, it is waived. *See* Pa.R.A.P. 1925(b)(3)(vii) (issues not included in the concise statement are waived). Therefore, we decline to address the arguments in his brief related to this issue.

in a Snapchat video. And now we hear from the testimony today and maybe at the time of trial, too, that those time periods were proven to be close to each other.

But the Snapchat videos were observed by the police on November 15th and 19th, 2019[,] and the search warrant . . . was conducted November 21st . . .. So I have to reject the argument that those were old videos. They were not old videos at all. And [Dortch] was in both videos wearing a Chicago Blackhawks [hoodie] and then was seen outside of his residence wearing that same clothing.

So I don't see where there's ineffectiveness in [not] challenging that search warrant. I think the relationship between the time of the videos and the posting of the videos on the internet, those by itself are not insufficient to get that warrant.

. . . I would have to say there's a . . . reasonable basis based on [trial counsel's] experience in defending cases like this or him not filing a motion to suppress. And even if the motion was filed, I don't see any chance . . . where it would have been successful, and there would have been no verdict more favorable to [Dortch] here.

I believe the warrant was valid. Looking at the four corners of the affidavit of probable cause, . . . I believe they did have a substantial basis for the probable cause determination that was made.

[Looking] at [the search warrant] in a common sense fashion, I don't see how the magistrate could not have signed that warrant.

* * * *

Now, on the standard for ineffective assistance, there's a . . . three-prong test, and the claim has to have arguable merit. And despite [PCRA counsel's] best efforts and professional presentation of that issue, both the writing and in court, I don't believe that this argument has merit. . . .

[Trial counsel had] a basis for his failure to act . . . [a]nd [Dortch] had to suffer prejudice as a result of this and I do not believe he was prejudiced at all. I don't believe that there would

- 14 -

have been an outcome any different than what [Dortch] received here.

And I also have to presume according to the law that [trial] counsel['s] representation of [Dortch] was effective. It's not his job to pursue meritless claims [a]nd I don't think there's any argument here that . . . filing the motion offered a potential for success . . . greater than [what occurred]. The proceedings I don't believe would have been different.

So in that regard, . . . looking at the relevant issues raised in a PCRA [petition], I believe for the reasons I just did give, that the warrant was valid and [trial counsel] was not ineffective. [Thus, Dortch] is not entitled for relief under the [PCRA].

N.T., 6/28/24, at 38-41 (unnecessary capitalization omitted).

After reviewing the record in the light most favorable to the Commonwealth as the verdict winner, we discern no error or abuse of discretion by the PCRA court in determining that Dortch's ineffectiveness claim was without merit. We reiterate that for trial counsel to challenge the search warrant for lack of probable cause, he would have needed to show that the facts and circumstances set forth did not warrant a man of reasonable caution to believe that a search should be conducted, nor create a fair probability that police would find contraband or evidence of a crime in Dortch's residence. *See Jones*, 988 A.2d at 655; *see also Davis*, 241 A.3d at 1173.

In the instant case, police obtained a search warrant based substantially on the fact that they witnessed Dortch in possession of two firearms on Snapchat videos posted on November 15, 2019, each filmed from the same room. Due to the way the Snapchat platform overlays its videos with a timestamp, police knew that the brothers filmed these videos that same day.

- 15 -

Police also knew where both Dortch and Destin resided, and decided to conduct surveillance of their residence. In doing so, police soon thereafter witnessed both brothers leaving the residence, each unarmed but wearing the exact same clothing as seen in these videos. Lasty, police discerned from the background of the Snapchat videos that the specific features of the room in which the videos took place were consistent with the general layout and structure of the brothers' home.

Based on our review of the above facts and circumstances supporting the search warrant, this evidence is not so tenuous as to prevent a man of reasonable caution from believing that a search of Dortch's residence would uncover the firearms he illegally possessed. *See Jones*, 988 A.2d at 655; *see also Davis*, 241 A.3d at 1173. Consequently, we conclude the record supports the PCRA court's determination that Dortch's underlying claim lacked arguable merit, such that counsel was not ineffective for failing to raise it. We therefore affirm the order dismissing Dortch's PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

6/17/2025